UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. _____

| | |
|---|---|
| The Satanic Temple, Inc., <br> *Plaintiff* <br><br> vs. <br><br> City of Boston, <br> *Defendant*, <br><br> Michelle Wu, in her official capacity, <br> *Defendant*. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

<u>COMPLAINT</u>

The Plaintiff, The Satanic Temple ("TST"), brings this Verified Complaint against the Defendants, the City of Boston and Michelle Wu, in her official capacity as the Mayor for the City of Boston ("Mayor Wu"), for violation of TST's First Amendment Free Speech and Free Exercise rights, violation of the First Amendment's Establishment Clause, and for failure to respond to TST's records requests pursuant to M.G.L. c. 66 § 10A.

In May 2022, the United States Supreme Court held that Boston had created a public forum out of its flagpole, and directed that Boston must fly a Christian flag on equal terms as any other. One day later, TST issued a proper application through Boston's website application to fly its own flag. Boston refused. A few months later, Boston issued an ordinance to require mayoral preapproval of any flags to be flown on this public forum and declared that all future flags to be flown

will be the official viewpoint of the City of Boston. One day later, Boston flew the Christian flag. Boston continuously refuses to fly a Satanic flag, although it continues to fly other flags.

This litigation asserts that: (1) TST's Establishment Clause right to be free from a government with an official denominational preference was violated when Boston declared all future flags would be officially endorsed and has since flown a Christian flag; (2) TST's Free Speech rights to participate in a public forum were violated when Boston shut down the public forum to silence disfavored viewpoints; and (3) TST's hybrid Free Speech / Free Exercise rights required that Boston fly a Satanic flag after it flew a Christian one. TST seeks an injunction to fly TST's flag and a declaration that Boston's ordinance is unconstitutional.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 USC § 1331 because this action asserts federal questions that arise under the laws of the United States Constitution, to wit, the Establishment Clause, the Free Exercise Clause, and the Free Speech Clause of the First Amendment, which have all been incorporated against the Commonwealth of Massachusetts and its subdivisions by the Fourteenth Amendment. Further, the Court has subject jurisdiction pursuant to 28 USC § 1367 because this action also asserts a state-law claim for failure to produce responsive public records about the facts which give rise to the federal questions.

2. This Court has general personal jurisdiction over all defendants because all reside within this District.

3. Venue properly lies with this Court under 28 USC § 1391 because a substantial part of the events giving rise to the claims pleaded herein took place in this judicial district.

## **PARTIES**

4. The Plaintiff, **The Satanic Temple, Inc.**, (the "TST") is an atheistic religious corporation with its principal place of business in Salem, Massachusetts. TST is recognized by the IRS as a "church" under 26 USC § 170(b)(1)(A)(i); has established its sincere religiosity in the District of Arizona;[1] is recognized as a bona fide religion entitled to equal treatment under the law in academic literature;[2] and is a recognized religion in popular culture.[3] As of February 12, 2025, TST's membership exceeds 808,000 and can be found in every State, including the City of Boston. TST venerates (but does not worship) the biblical adversary as a promethean icon against tyranny. TST and its membership takes inspiration from *Paradise Lost* and like works in which Satan is portrayed as a revolutionary antihero who stood up against impossible odds to seek justice and egalitarianism for himself and others. TST propagates its Seven Tenets:

    (1) One should strive to act with compassion and empathy toward all creatures in accordance with reason.

---

[1] *Satanic Temple v. City of Scottsdale*, No. CV18-00621-PHX-DGC, 2020 WL 587882 (D. Ariz. Feb. 6, 2020).

[2] *e.g.*, Joseph Laycock, *Speak of the Devil: How The Satanic Temple is Changing the Way We Talk about Religion* (Oxford University Press, 2020); Angela R. Pruitt, *Maybe Today, Satan: A Christian Supreme Court, Unbalanced Religious Clauses, and the Rise of the Satanic Temple*, 26 J. Gender Race & Just. 271 (2023); *Pandora's Box of Religious Exemptions*, 136 Harv. L. Rev. 1178 (2023); Allen Rostron, *Saints, Satanists, and Religious Public Charter Schools*, 59 Tulsa L. Rev. 451 (2024).

[3] *e.g.*, Penny Lane, *Hail Satan?* (Magnolia Films, 2019); La Carmina, *The Little Book of Satanism: A Guide to Satanic History, Culture, and Wisdom* (Ulysses Press, 2022).

(2) The struggle for justice is an ongoing and necessary pursuit that should prevail over laws and institutions.

(3) One's body is inviolable, subject to one's own will alone.

(4) The freedoms of others should be respected, including the freedom to offend. To willfully and unjustly encroach upon the freedoms of another is to forgo one's own.

(5) Beliefs should conform to one's best scientific understanding of the world. One should take care never to distort scientific facts to fit one's beliefs.

(6) People are fallible. If one makes a mistake, one should do one's best to rectify it and resolve any harm that might have been caused.

(7) Every tenet is a guiding principle designed to inspire nobility in action and thought. The spirit of compassion, wisdom, and justice should always prevail over the written or spoken word.

https://thesatanictemple.com/pages/about-us (last visited February 12, 2025). TST sues on behalf of itself and its membership for being denied an equal right to participate in the City of Boston's traditional public forum as Boston's preferred religious viewpoint.

5. **The City of Boston**, defendant, is a municipal corporation, organized under the laws of Massachusetts, and has a principal place of business in Boston, Massachusetts.

6. **Michelle Wu**, defendant in her official capacity, is Boston's mayor and, under Boston's new flag ordinance, must issue a proclamation before Boston can fly TST's flag on Boston's flagpole.

## FACTS COMMON TO ALL CLAIMS

7. Until August 2022, Boston allowed any interested member of the public to apply to fly a flag on Boston's flagpole (Boston's "flagpole pattern and practice").

8. On May 2, 2022, the United States Supreme Court determined that Boston's flagpole pattern and practice has comprised a public forum. *See Shurtleff v. Boston*, 596 U.S. 243 (2022). As a result, it was determined as a matter of law that Boston had violated a Christian group's First Amendment rights by refusing to fly a Christian flag. *See id.*

9. On May 3, 2022, TST issued a written application to emplace its flag on Boston's public forum flagpole through a form application on Boston's website as part of Boston's flagpole pattern and practice. An image of TST's flag follows:



[*remainder intentionally left blank*]

10. About one hour after issuing the application through Boston's web form, TST tweeted a screenshot of the completed application just prior to issuance:[4]



---

[4] https://x.com/satanic_temple_/status/1521574319263989762 (last visited February 12, 2025).

11. On May 4, 2022, an administrative assistant within Boston's property management depart-
ment emailed TST's listed contact with notice that Boston would not fly TST's flag be-
cause the City had placed "on hold" all flag raisings, and promised to reach out once the
City resumed accepting such applications.

12. On July 22, 2022, Boston entered into a consent decree in the *Shurtleff* action. *See* **Exhibit
1**—a true and accurate copy of the Shurtleff Consent Decree. Pursuant to that consent de-
cree, Boston agreed to be "permanently enjoined from enforcing against Plaintiffs [the
Christian group] … policies governing the City's flag raising program on the City Hall
Flag Poles on the City Hall Flag Poles which were in effect on or after July 28, 2017," and
which further required Boston to "allow Plaintiffs to conduct a flag raising event at the City
Hall Flag Poles, for approximately two hours, on August 3, 2022." *Id*., at ¶¶ 1, 2.

13. Boston also paid the Christian group $2.1 million for litigation costs and expenses.

14. In contemplation of emplacing the Christian group's flag, Boston issued an ordinance
which requires governmental approval of any flags before they are emplaced. *See* **Exhibit
2**—a true and accurate copy of the Flag Ordinance, at Ord. § 1-3A.4 ("The following [non-
Boston] flags may be displayed by the City *as an expression of the City's official senti-
ments*") (emphasis added). Said governmental approval takes the form of a mayoral proc-
lamation or a council resolution. *See id*., at Ord. § 1-3A.4(b).

15. On August 2, 2022, Mayor Wu published a press release which announced the requirement
for governmental approval of future flags to be raised in its adjudicated-public-forum, stat-
ing that she is glad to celebrate "our City's cultures and communities." *See* **Exhibit 3**—a
true and accurate copy of Mayor Wu's press release.

16. The Satanic Temple's membership forms part of Boston's culture and communities.

17. One day after Boston's ordinance declared that all future flags would be "an expression of the City's official sentiments," Boston flew the Christian flag.

18. Despite flying a Christian flag, Boston continuously refuses to fly a Satanic flag.

19. Despite resuming Boston's flagpole pattern and practice, and promising to notify TST of its resumption, Boston did not notify TST as promised.

20. Since its new ordinance, Boston has repetitiously flown various non-Boston flags.

21. However, based on the City's failure to produce any records thereof, no officials representing the City of Boston, the Boston City Council, or Mayor Wu's office have issued any official proclamations or passed any resolutions sponsoring flag raisings.

22. On June 7, 2024, Boston flew a "Caribbean American Heritage Month" flag. A true and correct depiction of which appears below:



23. On August 28, 2024, Boston flew the Trinidad and Tobago flag. A true and correct depiction of which appears below:



24. On information and belief, Boston has flown various other flags upon informal requests by various members of the public.

25. On information and belief, no officials representing the City of Boston or Mayor Wu's office have attended or participated in some of these flag raisings.

26. To ascertain the nature of flags being raised, as well as to evaluate the constitutionality of the new flag ordinance, TST through its general counsel issued a public records request for:

> All applications from May 1, 2022 to present to raise a flag pursuant to Ordinance § 1-3A.3(b); all mayoral proclamations to fly any granted applications; all city council resolutions to fly any granted applications; all bills of sale or like conveyances for flags on said granted applications; all communications pertaining to the consideration or denial of said applications; and all documents evidencing

the legislative history of Ordinance § 1-3A / Ord. 2022 c. 6 (including without limitation, a revision history of the ordinance, any meeting minutes or other notes reflecting discussion of same, and a list of author(s) of the ordinance).

**Exhibit 4**—a true and accurate copy of Public Records Request (dated February 7, 2024).

27. By operation of law, Boston had ten business days to respond, which was February 21, 2024. *See* M.G.L. c. 66, § 10(a); 950 CMR 32.06(2)(b).

28. Two days after the deadline, on February 23, 2024, Boston, through its assistant corporation counsel, acknowledged the request and invoked an additional 15 business days' time to respond which moved the deadline to March 15, 2024. *See* M.G.L. c. 66 § 10(b)(vi); 950 CMR 32.06(2)(i).

29. Boston did not respond by March 15, 2024.

30. On March 18, 2024, TST's general counsel followed up to determine the status of the request. *See* **Exhibit 5**—a true and accurate copy of Follow Up email.

31. Boston ignored the follow-up inquiry.

32. On March 27, 2024, TST's general counsel pursued an appeal through the Massachusetts supervisor of public records. *See* **Exhibit 6**—a true and accurate copy of Appeal to Supervisor of Records; M.G.L. c. 66 § 10A(a).

33. The supervisor of public records gave additional time for Boston to respond.

34. On June 3, 2024, Boston responded through its Director of Public Records that "[t]he City of Boston does not take applications to raise a flag, so no records are responsive to the portions of your request related to a permit process." **Exhibit 7**—a true and accurate copy of Boston's Response to Public Records Request.

35. However, as shown in the contemporaneous screenshot in ¶ 10, *supra*, Boston had a process to accept web form applications to raise a flag on May 3, 2022, and at least one application was made: TST's. The request sought all applications going back to May 1, 2022.

36. The request further sought all bills of sale or like conveyance documents for any flags flown on the flag since May 1, 2022. Non-Boston flags have repeatedly been placed on Boston's flagpole since then, and the ordinance has purportedly required a conveyance of the non-Boston flag since August 2, 2022; yet no conveyance documents were provided.

37. The request further sought all city council resolutions and mayoral proclamations to fly any non-Boston flags, as ostensibly required since August 2, 2022; yet none were provided.

38. The request further sought all documents evidencing the legislative history of the flag ordinance. Only a copy of the ordinance was provided.

39. Given Mayor Wu's public comments on the subject matter, there should be communications about the ordinance, a draft of the ordinance, notes reflecting discussion of the ordinance, and other public records evidencing the legislative intent behind the flag ordinance. None were provided and no written substantiation of any asserted exception was timely provided as required by statute. *See* M.G.L. c. 66 § 10(b)(iv).

40. The supervisor of public records never resolved the appeal.

## COUNT I:

**Free Speech violation – refusing TST's application dated May 3, 2022**

41. TST restates and re-alleges paragraphs 1 through 40 as if fully set forth herein.

42. Irrespective of discriminatory intent, Boston's flagpole pattern and practice were adjudicated to comprise a public forum as to which TST had an equal right as those who flew "dozens" of different flags by "hundreds" of uniformly-approved requests. *See Shurtleff*,

142 S.Ct. 1583, at 1587. TST's right was enforceable on May 3, 2022, and, as addressed by the *Shurtleff* Court, any pre-approval screening process was unconstitutional.

43. Same as the Christian group, Boston refused to emplace TST's flag because TST did not fall within Boston's "city-approved values or views." *Id.* at 1592.

44. The First Amendment prohibits Boston from reserving its public forum for "city-approved values or views." *Id.* at 1593.

45. Because Boston refused to emplace TST's flag on the exact same facts as it refused to emplace the Christian group's flag, *Shurtleff* controls and commands a finding that Boston "discriminated based on religious viewpoint and violated the Free Speech Clause." *Id.*

46. Boston claims it has now reserved its flagpole for "officially approved" viewpoints via its new ordinance; however, Boston has staunchly refused to provide any documentation or substantiation whatsoever of any change in its flagpole pattern and practice, nor of the adoption of a proper formal policy. As such, unsupported by any legislative history or record of implementation, Boston's ordinance is entirely pretextual.

47. The City of Boston, the Boston City Council, and Mayor Wu have issued no proclamations, passed no resolutions, or otherwise took any action that evinces an intent to substantively control Boston's adjudicated public forum and create a platform for government-sanctioned speech. Rather, Boston has superficially passed an ordinance while continuing to carry on the status quo at the time of *Shurtleff*.

48. Therefore, Boston unconstitutionally abridged TST's Free Speech expressive activity when it continuously refused to provide TST with access to the adjudicated public forum since the date of the application.

## COUNT II:

**Free Speech violation – shutting down a public forum to silence disfavored speech within it**

49. TST restates and re-alleges paragraphs 1 through 48 as if fully set forth herein.

50. The First Amendment prohibits Boston, which created a public forum, from "condition[ing] access to that forum on the content of the message to be communicated, or clos[ing] the forum solely because it disagrees with the messages being communicated in it." *Student Gov't Ass'n v. Bd. of Trustees of Univ. of Massachusetts*, 868 F.2d 473, 480 (1st Cir. 1989). Assuming Boston's ordinance is not pretextual, Boston would be seeking to unconstitutionally reserve its adjudicated public forum for only "officially approved" viewpoints.

51. Boston's purpose for reserving the public forum for only officially endorsed viewpoints is to silence all others, TST included, thus unconstitutionally distorting the free marketplace of ideas. Therefore, Boston unconstitutionally abridged TST's Free Speech expressive activity when it enacted the flag ordinance which purports to reserve its adjudicated public forum only for "officially approved" viewpoints.

## COUNT III:

**Free Speech / Free Exercise religious discrimination – refusing TST's application but permitting others**

52. TST restates and re-alleges paragraphs 1 through 51 as if fully set forth herein.

53. Having permitted the Christian group to raise a Christian flag, and other groups to raise other flags, Boston is constitutionally obligated to allow TST an equal opportunity to raise a Satanic flag.

54. Boston refuses to allow TST an equal opportunity to raise a Satanic flag as it allowed the Christian group to raise a Christian flag.

55. Treating TST's viewpoint as lesser-than is religious discrimination.

## COUNT IV:

### Establishment Clause violation – Official preference for Christians

56. TST restates and re-alleges paragraphs 1 through 55 as if fully set forth herein.

57. The Establishment Clause prohibits Boston from selectively allowing a Christian group to raise its flag on Boston's flagpole while failing to give a Satanic group equal treatment under the law.

58. Having raised a Christian flag, the Establishment Clause requires Boston to raise a Satanic flag.

59. Boston refuses to allow TST to raise its Satanic flag.

60. The Court should order Boston to fly TST's flag.

61. The Court should enter a mandatory injunction for Mayor Wu to proclaim January 14 as "Satanic Appreciation Day" and to direct the City of Boston to have a flag raising ceremony on the Boston flagpole for two hours.

## COUNT V:

### Violation of right to inspect public records

62. TST restates and re-alleges paragraphs 1 through 61 as if fully set forth herein.

63. The failure of a public body to comply with the right to inspect public records is privately actionable. *See* M.G. L. c. 66, § 10A(c).

64. Boston failed to produce public records that there is a basis to believe exist, despite a proper request through the established channel.

65. The Court should order Boston to produce all public records sought in the original request, and order fees and costs shifting for having to bring this matter to the Court's attention.

## JURY DEMAND

TST demands trial by jury on all issues so triable.

## PRAYERS FOR RELIEF

WHEREFORE this Honorable Court should enter judgment as follows:

1. Declare that Mayor Wu and Boston violated the First Amendment by refusing to grant TST's May 3, 2022 application;

2. Enter a mandatory injunction that Mayor Wu shall enter a mayoral proclamation which decrees January 14 as "Satanic Appreciation Day" and which directs the City of Boston to grant TST a flag raising event at the City Hall Flag Poles for two hours at a specified date and time;

3. Decree that Boston, its officials, employees and agents, and all other persons in active concert with it, shall refrain from enforcing against TST the policies governing the City's flag raising program;

4. Order compensatory damages in favor of TST and against Boston to compensate TST for the deprivation of its constitutional rights; or, if the Court finds that no monetary harm is proven, enter nominal monetary damages against Mayor Wu and Boston for violating the First Amendment;

5. Order Mayor Wu and Boston to compensate TST for its costs, disbursements, and attorneys' fees as allowed by case law or statute; and/or

6. Grant all other relief to which TST is entitled and/or this Court deems just and proper.

THE PLAINTIFF,
THE SATANIC TEMPLE, INC.,

By its attorneys,

Date:   April 18, 2025

/s/ Nicholas P. Shapiro
Nicholas P. Shapiro
BBO# 673490
nshapiro@phillips-angley.com
Robert K. Hopkins
BBO# 685714
rhopkins@phillips-angley.com
Alexandria K. Castaldo
BBO# 699014
acastaldo@phillips-angley.com
PHILLIPS & ANGLEY
One Washington Mall
Boston, Massachusetts 02108
Tel.: (617) 367-8787/Fax: (617) 227-8992

## **EXHIBIT LIST**

1. Shurtleff Consent Decree

2. Flag Ordinance

3. Mayor Wu press release

4. Public records request

5. Follow-up

6. Appeal to Supervisor of Records

7. Boston response to public records request