UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **THE SATANIC TEMPLE, INC.**<br>*Plaintiff*,<br>*vs.*<br>**CITY OF BOSTON,**<br>*Defendant*. | Case no:<br>1:25-CV-11024-AK<br><br>**MOTION TO COMPEL DISCOVERY AND FOR ATTORNEY'S FEES** |

**COMES NOW** Plaintiff The Satanic Temple, Inc. ("**TST**"), by and through counsel of record, on motion to compel discovery and for attorney's fees. FRCP 37(a)(3)(B), (d)(3).

## PROCEDURAL HISTORY

At issue is a First Amendment case following the outcome in *Shurtleff v. Boston*,[1] which resulted in a Supreme Court finding that Boston's custom of flying non-Boston flags upon applications by members of the public constituted a public forum. The next day, on May 3, 2022, TST issued a flag-raising application through one of Boston's usual channels, a web form. See Compl. ¶ 10. Boston refused to fly TST's flag. Answer ¶ 11.

*Shurtleff* noted that Boston could change that policy "going forward." *Id.*, at 258. But Boston did not purport to change its policy until a few months after denying TST's application, in August 2022 (it is disputed that the policy "changed" at all, and if so when that change took effect). Compl. ¶¶ 14-15; Answer ¶¶ 14-15. The Flag Ordinance requires a City Council

[1] *See Shurtleff v. City of Bos., Massachusetts*, 596 U.S. 243 (2022).

Resolution or Mayoral Proclamation to direct the non-Boston flag flying, and requires Boston to take ownership of the non-Boston flag. Compl., Ex. 2 (§ 1-3A.3(b), -3A.4(d)).

One day after publicly filing an ordinance which declares all flags moving forward would express "the City's official sentiments," Boston flew a Christian flag. Compl. ¶ 17. Although Boston accepted applications from various third parties, and repeatedly raised various other flags all along, Boston has continuously refused to fly TST's flag since May 2022. See Answer ¶ 11. TST therefore complains of viewpoint discrimination under a pretextual change in policy (Count I), alternatively asserts that any change in policy was designed to suppress disfavored views under by cloaking only favored speech as "government speech" (Count II), suppressing particular religious speech (Count III), and elevating the Christian flag above TST's (Count IV). TST also complains Boston withheld public records before this action (Count V).

In response, Boston generally denied the salient allegations, asserted that it had suspended flag raisings in October 2021, and affirmatively pleaded that all actions taken were under the reasonable belief that they do not violate the First Amendment. See, generally, Answer.

To test some of Boston's assertions, TST issued written discovery requests on July 2, 2026. Ex. 1. Following a two-week extension, Boston issued objections and limited production of documents on August 17, 2026 with a supplement on August 26, 2026. Ex. 2. TST issued a discovery deficiency letter on September 30, 2026 which addressed deficiencies in Boston's responses to requests for production, and requested a meet-and-confer. Ex. 3. Boston provided further documentary supplements on September 30, 2026 and October 23, 2026.

A telephonic meet-and-confer occurred on October 8. Representing Plaintiff was the undersigned, Matt Kezhaya. Representing Defendant was Katherine Auberdine-Jones. The call lasted 0.3 hours. Counsel for the Defense was unable to address the substance of any

deficiencies addressed below, the existence or non-existence of responsive records, or the efforts to obtain and produce them. The parties agreed on the need for a privilege log to support privilege assertions, as well as the need for a discovery extension. Ex. 4, at 2-3. Boston produced a privilege log on October 16, 2026. Ex. 5.

Additional agreements were reached and breached. Boston was to respond to the deficiency letters by October 16. Ex. 4, at 3. Ms. Aubuchon-Jones unilaterally extended that to sometime during the week of October 19. Ex. 4, at 2. That turned into a promise by Mr. Whitesell (counsel for Boston) to call Mr. Kezhaya sometime during that week. Ex. 4, at 1. The promised call never occurred, and Boston never responded to the deficiency letter. The parties also agreed to exchange dates for a Rule 30(b)(6) deposition. Ex. 4, at 3. Boston's counsel indefinitely postponed that agreement, (Ex. 4, at 1 and 2), which will likely require TST to unilaterally issue a notice.

Nearly one month after issuing its deficiency correspondence, TST still has no response. The underlying bases, if any, for Boston's sundry boilerplate objections are entirely unknown to TST. While the parties agreed to a three-month discovery extension, see Doc. 29, that was necessary to accommodate Boston's ongoing delay in producing complete responses to these initial discovery requests. Boston cannot delay until the last minute to provide initial discovery disclosures because that precludes TST from issuing follow-up requests.

Following TST's repeatedly ignored efforts to get Boston to engage in a meaningful meet-and-confer, see Exs. 3 and 4, the undersigned certifies that TST has in good faith conferred or attempted to confer with Boston in an effort to obtain the answers or responses without court action. Fed. R. Civ. P. 37(a)(4), (d)(1)(B). This motion timely follows.

# ARGUMENT

## I. Conveyance documents

The *Shurtleff* Court noted that government speech usually involves government ownership of the expressive material at issue. *Shurtleff*, 596 U.S. at 257. Purportedly, Boston resolved to take ownership of any non-Boston flag which it flies. Compl., Ex. 2 at 3 (§ 1-3A.4(d)) ("The City shall acquire ownership of all flags that it flies in place of the City of Boston flag").

To evaluate whether Boston is complying with its own policy (germane to Count I), TST propounded Request for Production No. 1:

> Produce all bills of sale or other legal conveyance documents for every flag acquired by the City of Boston in connection with a flag raising ceremony of a non-Boston Flag, as required by the City of Boston Ordinance 1-3A Display of Flags on City Hall Plaza.

And Request for Production No. 2:

> Produce all documents which reflect the date of acquisition, acquisition method, consideration paid, donor, transferee, and person approving the acquisition of any flag acquired by the City of Boston in connection with a flag raising ceremony of a non-Boston Flag, as required by the City of Boston Ordinance 1-3A Display of Flags on City Hall Plaza

Boston provided two documents in response: (1) an invoice for a series of flags dated June 28, 2023; and (2) an invoice for additional flags dated December 19, 2023. Nothing was provided to cover the ten months between the Flag Ordinance's passage and the earlier invoice, although the City's own index of flag raisings indicates the following flags were flown after the Flag Ordinance but before the earlier invoice:

- August 16, 2022 at 10:00 AM – Dominican Flag[2]
- Oct. 6, 2022 – Taiwan Day (COB 273)
- Oct. 6, 2022 – Indigenous Peoples Day (COB 273)
- Mar. 17, 2023 – Irish-American Heritage Month (COB 273)
- Apr. 30, 2023 – Greek Independence Day (COB 273)
- May 3, 2023 – Polish Constitution Day (COB 273)
- May 18, 2023 – Haitian Flag Day (COB 273)

Moreover, the same index shows raisings of flags which do not appear on either invoice:

- February 9, 2024 – Grenada (COB 274)
- March 8, 2024 – Montserrat (COB 275)
- March 26, 2024 – Bangladesh (COB 275)

The foregoing flags had to come from somewhere. If Boston took ownership of them, it needs to provide the documents which would tend to prove that. If Boston did not take ownership of them, it should issue a sworn admission to that effect. Either way, TST is entitled to evidence which either supports or undermines a finding that Boston is following its own policy.

## II. Council Resolutions and Mayoral Proclamations.

The *Shurtleff* Court noted that Boston "had no written policy limiting the use of the flagpole based on the content of a flag." *Shurtleff*, 596 U.S. at 248. Purportedly, that changed with Boston's Flag Ordinance, which post-dated TST's application and which requires either a

[2] *See* https://boston.granicus.com/player/clip/113 (3:19:06-3:19:22) ("Now that we have a new ordinance that is ultimately setting the parameters for the flag raising we will be raising the Dominican Flag on the Pole on Tuesday at 10:00 AM.").

City Council Resolution or a Mayoral Proclamation to fly a non-Boston flag. Compl., Ex. 2 at 3 (§ 1-3A.3(b)).

To evaluate whether Boston is complying with its own policy (germane to Count I), TST propounded Request for Production No. 4 which sought: "all City Council resolutions about the Flag Pole Custom from January 1, 2017 to the close of discovery," including "all resolutions which authorize the flying of a non-Boston flag." Ex. 1, RFP 4.

TST also issued Request for Production No. 5 which sought all "Mayoral proclamations about the Flag Pole Custom from January 1, 2017 to the close of discovery," including "all proclamations which authorize the flying of a non-Boston flag." Ex. 1, RFP 5.

Boston objected that both requests are "not reasonably limited in time and scope." There is no request-specific discussion as to why Boston took that position. The opponent of producing discovery has the burden to provide a tailored discussion for why the request is overly broad, unduly burdensome, or otherwise not proportional to the needs of discovery. *E.g.*, *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016). A failure to do so renders the objection "boilerplate," which is "tantamount to not making any objection at all." *HealthEdge Software, Inc. v. Sharp Health Plan*, No. 19-CV-11020-ADB, 2021 WL 1821358, at *4 (D. Mass. May 6, 2021). It is unclear how these requests are not reasonably limited. The fact record was established up to 2018 through the *Shurtleff* case. These requests merely seek to extend that fact record up to present. Comparing the facts between then and now is directly relevant to the claim that Boston did not actually change its policy (Count I).

We believe additional responsive documents exist, and if responsive records do not exist then Boston should unambiguously admit as much. Boston has flown various non-Boston flags since the Flag Ordinance, for which there has been neither a resolution nor a proclamation provided that directs the flying of a non-Boston flag. A non-exhaustive list follows (all stylistic and typographical errors are in the original, duplicate events have been eliminated):

| Knack ID | Date and time of event | Name of event | Organization |
|---|---|---|---|
| 278 | 09/07/2022 11:00 am | Brazilian Bicentennial Independence Day Raising the Flag Event | Consulate General of Brazil |
| 258 | 10/16/2022 1:00 pm | Bandera Cubana Flag Raising | Bandera Cubana,Inc |
| 541 | 11/28/2022 10:00am | Albanian Independence Flag Raising | Massachusetts Albanian American Society |
| 1205 | 06/12/2023 12:00 pm | Philippine Independence Day Flag Raising | Philippine-American Mainstream Advocacy for |

| Knack ID | Date and time of event | Name of event | Organization |
|---|---|---|---|
| | | | Nonpartisan Associ-ations, Inc. |
| 1368 | 09/13/2023 9:00 am | Rise and Raise: Uniting Under the National Iranian Flag for Women's Life and Freedom Movement | https://www.from-bostontoiran.org/ |
| 1545 | 09/13/2023 10:00 am | Stand with Iranian Women | https://www.from-bostontoiran.org/ |
| 1706 | 10/20/2023 2:00 pm | Flag Raising 44th Independence of St. Vincent and The Grenadines | St. Vincent & The Grenadines Assoc of MA |

Each of the foregoing is output from the City's modern event applications software (the "**Knack**" system) with the field "Form Status" stating "Applicant notified of approval," and where the applicant is plainly a third party to this litigation. These are only the clearest examples of third-party applications being granted after the Flag Ordinance, for which no City Council Resolution or Mayoral Proclamation has been provided. It is entirely possible that

additional flags have also been flown which are not clearly reflected in the Knack system. There are several other events with the "Form Status" reflecting "Needs Commissioner review #1," it is unclear whether these entries reflect Flag Raisings which did or did not occur.

If no Mayoral Proclamations or City Council Resolutions exist for these events, an agent with authority to bind the City should unambiguously state so under penalty of perjury. If they do exist, the responsive documents should be provided.

## III. The drafting record behind the Flag Ordinance.

The *Shurtleff* Court noted that Boston could change its policy "going forward." *Shurtleff*, 596 U.S. at 258. Purportedly, Boston did so on or about August 10, 2022. See Compl., Ex. 2. TST issued its application three months earlier, on May 3, 2022. Compl. ¶ 10. To assist in determining whether the Flag Ordinance was an unconstitutional effort to cloak favored private speech "as government speech by simply affixing a government seal of approval"[3] (germane to Count II), as well as to establish the timeline in which Boston began its efforts to change its policy "going forward," TST sought the drafting record behind the Flag Ordinance.

TST issued Request for Production No. 7:

> Produce all drafts, revisions, redlines, tracked-change versions, comments, version histories, and collaboratively edited documents which culminated in the City of Boston Ordinance 1-3A Display of Flags on City Hall Plaza.

And Request for Production No. 8:

[3] *Matal v. Tam*, 582 U.S. 218, 235 (2017)

> Produce all documents and electronically stored information concerning the drafting, revision, review, analysis, or implementation of Boston Ordinance 1-3A Display of Flags on City Hall Plaza. Without limiting the generality of the foregoing, responsive documents should include all communications with persons outside City of Boston government concerning the ordinance, including: advocacy organizations, religious organizations, nonprofit organizations, consultants, lobbyists, and members of the public.

Rather than produce any responsive documents, Boston issued boilerplate objections. *First*, common to RFP 7 and 8, a limited objection "to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine." Ex. 2, response to RFP 7 and RFP 8. It is not sufficient to merely object "to the extent" a privilege may apply, the proponent of a privilege must lay a factual foundation for the claim of privilege and note which documents were withheld based on that claim. See, generally, Fed. R. Civ. P. 26(b)(5)(A). In federal practice, this is "universally" done by issuing a privilege log. *Degrandis v. Children's Hosp. Bos.*, 203 F. Supp. 3d 193, 200 (D. Mass. 2016). "A party that fails to submit a privilege log is deemed to waive the underlying privilege claim." *Bryan Corp. v. Chemwerth, Inc.*, 296 F.R.D. 31, 41 (D. Mass. 2013). The privilege log eventually provided does not include any entries before August 10, 2022 (when the Flag Ordinance was formally adopted). See Ex. 5. The earliest entry is dated October 6, 2022, almost exactly two months later. Any documents and communications responsive to RFP 7 and 8 would necessarily predate the formal adoption of the Flag Ordinance. Boston therefore failed to carry its burden to show that any part of the documents responsive to RFP 7 and 8 are protected by privilege.

*Second*, Boston objected that RFP 7 and 8 were "overly broad and unduly burdensome." Ex. 2, at 3. There is no specific discussion to support the objection. That boilerplate objection was tantamount to no objection at all. *E.g.*, *HealthEdge Software,* 2021 WL 1821358, at *4.

*Third*, solely as to RFP 8, Boston objected that the request is "vague and ambiguous." There is no discussion to address what part of the request is vague. *See id.* (to support a vagueness objection, the resisting party "must articulate precisely why a particular discovery request … uses vague terms.") Here again, this was tantamount to no objection at all.

Therefore, the Court should overrule the objections, find that any potential assertion of privilege has been waived by the failure to include responsive documents in a privilege log, and order Boston to provide all documents responsive to RFPs 7 and 8.

We know responsive documents exist. In the August 10, 2022 meeting in which the Flag Ordinance was formally passed, Councilor Bok acknowledged Councilor Louijeune and Council President Flynn for reviewing the draft ordinance. See https://boston.granicus.com/player/clip/113 (1:18:28-1:18:38). There must be documents and communications which reflect that. Yet Boston provided no responsive documents. Boston's discovery disclosures include neither drafts nor communications about the new Flag Ordinance. The earliest provided document which purports to analyze the Flag Ordinance is an email dated October 2022–two months after passage. Ex. 5.

Moreover, the information sought would be helpful to resolve a factual discrepancy in the City's produced records. The Flag Ordinance resolution includes a factual assertion that flag raisings had been suspended since the Supreme Court granted certiorari on *Shurtleff*, which suspension allegedly began on October 19, 2021. Yet Boston's own records show that many flag raisings took place between October 19, 2021 and August 10, 2022–not least of which the Christian flag raising on August 3, 2022, which is itself curiously omitted from the City's provided records. A non-exhaustive list follows (any typographical errors are in the original):

- October 29, 2021 at 11:00 am – Turkish Flag raising (Legacy application # 26640)[4] [Application date: 11/16/2020]
- November 1, 2021 – Antigua Independence Day (Legacy application # 30051) [Application date: 10/1/2021]
- November 12, 2021 at 3:00 pm – East Turkistan Remembrance Day (Legacy Application # 30053) [Application date: 9/30/2021]
- November 30, 2021 at 11:15 am – Barbados Flag Raising Ceremony (Legacy Application # 30058) [Application date: 10/15/2021]
- February 1, 2022 at 11:30 am – Pan-African (RBG) — Black History Month (Legacy application # 30039) [Application date: 9/17/2021]
- April 5, 2022 – Gold Star Wives (Legacy Application #29049) [Application date: 8/24/2021]
- May 19, 2022 – Pan-African (RBG) — Malcolm X Day (Legacy application #30040) [Application date: 9/17/2021]
- June 14, 2022 – United States Army (Legacy application #29050) [Application date: 8/24/2021]
- June 17, 2022 – Pan-African (RBG) — Juneteenth (Legacy application #30041) [Application date: 9/17/2021]

[4] The earliest provided Knack records, previously mentioned, only date back to August 27, 2022. Before then, Boston used the "**Legacy**" system.

- July 5, 2022 – Cape Verde Independence Day (Knack record # 52) [Application dates unavailable on the Knack data output]
- July 14, 2022 – Liberia – Liberians Celebrate Work Permits (Knack record # 55) [Application dates unavailable on the Knack data output]
- July 14, 2022 – Negro Election Day Flag Raising (Legacy application # 35318) [Application date: 5/3/2022]
- July 28, 2022 – Peru (Legacy application # 29032) [Application date: 7/30/2021]
- August 4, 2022 – United States Coast Guard (Legacy application #29052) [Application date: 8/24/2021]
- August 7, 2022 – Purple Heart Day (Legacy application #29055) [Application date: 8/24/2021]

Each of the foregoing Legacy applications reflect a "Grant?" status of "Yes," with the flag-raising date between 10/19/2021 (when flag raisings were supposedly suspended) and 8/10/2022 (when flag raisings were supposedly resumed under a cloak of "government speech"). Several applications were also made during the alleged period of suspension.

Likewise, City records indicate that TST's own flag-raising applications, which were received during the supposed period of suspension, also show a "Grant?" status of "Yes":[5]

[5] Prior to discovery, undersigned counsel was unaware of two of TST's applied-for events–"The Satanic Temples Fight Against Government Corruption" and "Blasphemy Day"–but the complaint should be broadly construed to generally incorporate all refusals to fly TST's flag; and, as to Count V, to generally include refusals to provide these applications as well.

- Application date: May 3, 2022 – Satanic Appreciation Week (Legacy application # 35320)
- Application date: May 3, 2022 – The Satanic Temples Fight Against Government Corruption (Legacy application # 35321) [This application's "Grant?" status is "Yes*." It is unclear from the face of the document what the asterisk signifies.]
- May 5, 2022 – Blasphemy Day (Legacy application # 35327)

Certain other flag raising applications during this same time-frame were apparently denied (signified by a "Grant?" = "No"):

- March 1, 2022 – Mardi Gras (carnival) (Legacy applications #33247 and #33259)
- March 23, 2022 – [Not identified in the record, just "Flag Raising"] (Legacy application #33160)
- April 30, 2022 – Black April (Vietnamese) (Legacy application #35294)
- July 25, 2022 – Puerto Rico (Legacy application #33162)

None of this adds up. Perhaps there is a good explanation for why the resolution says applications were not being taken whereas the City's own records show they were both being taken and being ruled upon. Or perhaps the resolution is merely predicated on a convenient but false pretext. Those questions will likely be answered by reviewing the documents and communications leading up to the Flag Ordinance. TST is entitled to review that evidence to make sense of this internally inconsistent information.

## IV. Flag Applications (2018 – present)

The *Shurtleff* Court noted that Boston received applications to raise flags and its "practice was to approve flag raisings, without exception." *Shurtleff*, 596 U.S. at 256-57. To ascertain what flag applications were made after the *Shurtleff* motion for summary judgment, TST sought event-applications data "corresponding" to an exhibit attached to that motion, "from July 16, 2018 through the date of production." RFP 16. Boston provided flag-raising applications, but only from September 10, 2006 to June 19, 2018. COB 592-898. This was non-responsive. The applications sought were from 2018 moving forward, not backward. As partially itemized in Sections II and III, above, Boston plainly received several flag-raising applications from third parties since 2021. Doubtless, there are more going back to 2018. *Shurtleff* developed the record up to 2018. TST is entitled to develop the record since 2018.

Of the eighteen categories of metadata sought about flag raising applications, Boston provided six categories from June 2005-June 2022 and five categories from July 2022 onward. COB 286, 287-487 (the Legacy data includes application submission dates, but the Knack data does not). In addition to what was provided, TST further sought and seeks to compel:

> (f) applicants' contact information [which would have been provided on the applications]
> (g) submission date [Knack data only]
> (h) approval date
> (l) event category or type
> (m) whether the event included a flag raising
> (n) whether the event was approved, denied, cancelled, withdrawn, or pending
> (o) All notes, comments, status fields, and internal tracking fields associated with the event;
> (p) The identity of City personnel who created, modified, reviewed, approved, or denied the event record; and

> (q) The dates and times of any creation or modification of the record.

Ex. 1, RFP 16.

To justify its non-responses, Boston issued boilerplate objections, that RFP 16 was (1) "not reasonably limited in time and scope"; (2) objectionable "to the extent … it is vague and ambiguous;" (3) "is overly broad, unreasonably cumulative, and unduly burdensome;" and (4) objectionable "to the extent that it seeks documents protected by the attorney-client privilege and/or work-product doctrine." Ex. 2, response to RFP 16. There is no specific discussion or privilege log entries to support any of these objections.

The time and scope of this request are entirely reasonable. As mentioned, TST primarily claims that the supposed change in policy is a mere pretext, that Boston's Flag Pole Custom after *Shurtleff* is not materially different from before *Shurtleff*. See Compl., Count I. Obviously, that requires comparing the facts as they are now to what they were in 2018 when the *Shurtleff* fact record was gathered. All of the above categories are germane to TST's claims. Fed. R. Civ. P. 26(b). Applicants' contact information would allow TST an opportunity to contact other applicants to see how their applications were treated (germane to Counts I, III, and IV). The applications on which the contact information would be shown directly bear on the City's claim that it stopped taking applications in October 2021, and TST's claims of viewpoint discrimination and a failure to produce public records in the lead-up to this litigation (germane to Count V). Categories (m), (n), and (o) would eliminate ambiguity on the nature of particular events applications and whether they were granted. For example, did "Prioritize BPS Rally," which took place at the "City Hall Flag Pole Area," on November 15, 2022, as evidenced by Knack ID 488, entail a flag raising? TST should have equal access to the documents

which would answer that question as Boston. Categories (o), (p), and (q) all bear on how other applications were treated (germane to Counts I, III, and IV).

The "vague and ambiguous" objection and the "overly broad," etc., objections are unsupported by request-specific discussion and therefore tantamount to no objection at all. *HealthEdge Software*, 2021 WL 1821358, at *4. And there are no privilege log entries evidencing a refusal to provide documents responsive to this request to support any assertion of privilege. See Ex. 5. Therefore, the Court should overrule the objections, find that any potential assertion of privilege has been waived by the failure to include responsive documents in a privilege log, and order Boston to provide all documents responsive to the above-specified categories of documents and electronically stored information sought by RFP 16.

## V. Emails responsive to miscellaneous search terms.

Boston affirmatively pleaded a defense that its employees "at all times acted in good faith and upon [the] reasonable belief that their actions were in accordance with the Constitution." Answer, at 8. To ascertain the facts behind that assertion, TST propounded Request for Production No. 3:

> Produce all emails and attachments from May 1, 2022 through December 31, 2022 referring or relating to any of the following search terms:
>
> (a) TST
> (b) The Satanic Temple
> (c) satanic
> (d) religious flag
> (e) Shurtleff
> (f) public forum
> (g) government speech
> (h) flag policy
> (i) flagpole program

(j) Ordinance 1-3A
(k) City Hall Plaza flag.

Boston produced a single email in response: an October 2022 memorandum to the City Council about the Flag Ordinance, and fully redacted its body and withheld the attachment. See Ex. 5. There are no other emails provided in that time-scope (or otherwise), and no attachments at all.

To justify its non-responses, Boston issued three boilerplate objections: (1) the search terms are not "reasonably limited in scope;" (2) they are "overly broad and unduly burdensome;" and (3) they may seek "documents protected by the attorney-client privilege and/or work-product doctrine." Ex. 2, at 2. There is no specific discussion as to why this request should be limited, or why it is unduly burdensome, and there are no privilege log entries to preserve a claim of privilege. These boilerplate objections are "tantamount to not making any objection at all." *HealthEdge Software,* 2021 WL 1821358, at *4.

Boston has yet to articulate any ground on which these search terms or this time frame could be held irrelevant to the case. Nor can it. The search terms and time frame go to the very heart of this dispute. They are tailored to evaluate information about the purported change in policy, about the implementation thereof, and about the decision to reject TST's flag-raising application.

## VI. Documents concerning suspension and modification.

Despite maintaining an events application process under which an applicant could check a box for "City Hall Flag Poles," see Compl. ¶ 10, the City contends that the Flag Pole Custom had been suspended on the date of TST's application. To evaluate that contention, as

well as the circumstances leading up to the Flag Ordinance which post-dated TST's application, TST issued three Requests for Production.

Request for Production No. 18:

> Produce all documents and communications concerning the decision to suspend, place on hold, discontinue, close, modify, replace, or otherwise alter the City Hall flagpole program following the Supreme Court's decision in *Shurtleff v. City of Boston*.

As to RFP 18, Boston objected that it is (1) "not reasonably limited in time and scope;" (2) "to the extent that it is vague and ambiguous;" (3) "is overly broad, unreasonably cumulative, and unduly burdensome;" and (4) "to the extent that it seeks documents protected by the attorney-client privilege and/or work-product doctrine." There is no tailored discussion to support any of these objections. These were boilerplate, and tantamount to no objection at all. *HealthEdge Software,* 2021 WL 1821358, at *4. The privilege assertion is not backed by a single entry on the privilege log during the date range sought. See Ex. 5.

TST also issued Request for Production No. 19:

> Produce all nonprivileged documents referring or relating to the City's decision to make the City Flagpoles operate as government speech rather than a public forum following Shurtleff

and Request for Production No. 20:

> Produce all communications from May 1, 2022 through August 11, 2022 that mention or refer to:
>
> (a) TST;
> (b) The Satanic Temple;
> (c) Shurtleff;
> (d) satanic flags;
> (e) religious flags;
> (f) closing the flagpole program;
> (g) suspending flag raisings;
> (h) public forum;

(i) government speech; or
(j) Ordinance § 1-3A.

As to RFP 19 and 20, Boston objected: (1) "to the extent that it is vague and ambiguous;" (2) "is overly broad and unduly burdensome;" (3) "to the extent that it seeks documents protected by the attorney-client privilege and/or work-product doctrine;" and (4) "to the extent that it calls for a legal conclusion." Same as above, there is no tailored discussion to support objections (1) or (2), so these were tantamount to no objection at all. *HealthEdge Software,* 2021 WL 1821358, at *4. As to the assertion of privilege, RFP 19 specifically asked for non-privileged documents, so any privileged documents are non-responsive; and as to RFP 20 there are no entries on the privilege log during the May 1, 2022 – August 11, 2022 time-scope sought. As to the "legal conclusion" objection, that is not a competent discovery objection. See Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for … [a] contention that relates to … the application of law to fact.")

It is unfathomable that a government entity allegedly coordinated a decision to cease accepting applications after having a 16-year history accepting them, and enacted a resolution (requiring the entire City Council's votes), all without creating a single document or communication before the vote. TST is entitled to evaluate whether the backroom dealings tend to prove that the decision was ultimately rooted in an unconstitutional desire to suppress disfavored viewpoints, as alleged.

Boston failed to respond to a request for a discovery conference within 7 days of the request. Ex. 4, at 6 and 8; LR 37.1(a). The Court should order fees-shifting. Id.; FRCP 37(d)(3).[6]

[6] Pursuant to LR 37.1(b), the undersigned certifies that the provisions of LR 37.1 have been complied with.

**WHEREFORE** the Court should overrule Boston's sundry boilerplate objections, find that any potential claim of privilege is waived to responsive documents by the failure to include those entries on the privilege log, and order Boston provide full document productions in response to Requests for Productions Nos. 1-5, 7, 8, 16, and 18-20 by a date-certain; and order Boston compensate TST's attorney's fees for having to bring this motion.

Respectfully submitted on October 28, 2026,

By: */s/ Matt Kezhaya*
Matt Kezhaya (# 0402193) (*phv*)
KEZHAYA LAW PLC
150 S. Fifth St., Suite 1850
Minneapolis, MN 55402
phone: (612) 276-2216
email: matt@kezhaya.law

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon all counsel of record on October 28, 2026 via the Court's CM/ECF system. *s/Matt Kezhaya*

## EXHIBIT LIST

1. TST's First Discovery Requests
2. Boston's Responses to TST's First Requests for Production
3. TST's Deficiency Letter re: Boston's Responses to TST's First Requests for Production
4. Email thread re: TST's efforts to meet and confer.
5. Boston's Privilege Log