**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

THE SATANIC TEMPLE, INC.

Plaintiff,

v.

CITY OF BOSTON,

Defendant.

**C.A. No.: 1:25-cv-11024-AK**

## THE CITY OF BOSTON'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND FOR ATTORNEY'S FEES

The City of Boston (the "City") submits this opposition to plaintiff the Satanic Temple, Inc ("TST") Motion to Compel Discovery (the "Motion to Compel"). In support of its opposition, the City states that: (1) production of documents by the City is ongoing and the discovery deadline was recently extended by agreement of the parties; (2) TST seeks to compel some irrelevant documents; (3) the scope of some of the requests is not proportional to the need of the case, as required by Rule 26(b)(1); (4) the City has not refused to provide any documents (other than two that were authored by the City's Law Department and were identified on a privilege log) and is working to produce all outstanding discovery; (5) as of October 23, 2026, the City had produced 1,239 pages of relevant documents; and (6) in connection with the filing of this opposition, the City produced a portion of the outstanding email production – approximately 3,600 pages almost entirely consisting of emails. The City cooperated with TST despite the fact that TST sought to force a response to TST's deficiency letter while lead counsel was in the middle of a federal reversed conviction trial. TST's real issue is that none of the documents produced by the City lend any support to its claims. In light of all of these factors, the City respectfully requests that this

Honorable Court deny TST's Motion to Compel.

**Relevant Background**

On April 22, 2025, TST filed its complaint against the City. *See* ECF Doc. No. 1. On March 4, 2026, the Court entered a scheduling order setting, among other deadlines, a discovery deadline of December 18, 2026. *See* ECF Doc. No. 20. On July 2, 2026 Plaintiff served its First Set of Discovery Requests on the City. On August 17, 2026, the City served Plaintiff with a copy of the City's responses to TST's First Set of Discovery Requests and an initial production of documents. On October 21, 2026, the Parties filed a joint motion to extend the discovery deadline. *See* ECF Doc. No. 28. The court allowed the motion and ordered all discovery to be completed by March 19, 2027. *See* ECF Doc. No. 29. On October 28, 2026, TST filed its motion to compel, seven days after the court agreed to extend the discovery deadline. *See* ECF Doc. No. 32. To date, the City has produced approximately 5,700 pages of documents. As discussed below, the City is actively engaged in discovery and has not withheld any documents other than two legal memoranda authored by the City Law Department that are protected by the attorney-client privilege and were identified on a privilege log provided to TST.

**Argument**

## I. LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In defining the scope of permissible discovery, Rule 26 contemplates "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely

benefit." Fed. R. Civ. P. 26(b)(1). Under Rule 34 "[a] party may serve on any other party a request within the scope of Rule 26(b) ... to produce and permit the requesting party ... to inspect ... the following items in the responding party's possession, custody, or control: .... any designated documents or electronically stored information ... stored in any medium from which information can be obtained...." Fed. R. Civ. P. 34(a)(1)(A). "District courts exercise broad discretion to manage discovery matters." *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003).

## II. THE CITY'S DOCUMENT PRODUCTION IS ONGOING, AND ADDITIONAL MATERIALS CONTINUE TO BE PRODUCED ON A ROLLING BASIS

The City has actively responded to discovery in this case. To date, the City has produced approximately 5,700 pages of documents across several productions. Prior to TST filing the Motion to Compel, the City indicated that additional documents were forthcoming, including the email communications which TST now seeks to compel. The City has been working diligently to address the issues raised by TST, many of which the City has already identified and has been addressing through its ongoing document productions. Any delay in getting the remaining records to TST's counsel is a result of a workload and staffing issues and not the City's unwillingness to provide the remaining documents.

Despite the City's good-faith efforts to cooperate with TST and avoid any unnecessary court intervention, those efforts were disregarded. TST served the City with its deficiency letter on September 30, 2026, just days before lead counsel for the City was to begin a federal trial scheduled to be two-weeks long in the case styled *James Lucien v. City of Boston et al*, in Federal District Court, Civil Action No. 1:24-cv-11341-RGS. Although lead counsel was not available to meet-and-confer within the time prescribed by the rules, counsel for the City did confer with counsel for TST to discuss the issues raised in its deficiency letter. During the conference, the

parties discussed extending the discovery deadline and TST's concerns about the City's document production and discovery responses. During the call, the City agreed to provide a privilege log for two memoranda regarding flag raising guidance and guidelines. The City provided the privilege log on October 16, 2026. The City also agreed to provide archived web pages that were responsive to TST's discovery requests and mentioned that we would be providing email discovery. The City has since produced the archived web pages and has rolled out approximately 3,600 pages of responsive emails. Following the conference, the parties filed a joint motion to extend the discovery deadline, which was granted through March 2027.

The City has made no representations that all documents have been produced or that the responses to TST's First Request for the Production of Documents are final. On the contrary, on October 23, 2026 the City indicated in an email to TST's counsel that additional discovery, in particular emails, were forthcoming. Rather than wait for the additional documents and despite the Court granting the motion to extend the discovery deadline, TST proceeded with filing its motion to compel days later. Furthermore, in nearly all of the City's responses to Plaintiff's document requests the City stated that it "reserves the right to supplement" indicating that a supplemental response would be provided once additional documents were produced. Any delay in producing the remaining documents is attributable to the volume of materials requiring review and production, not any unwillingness on the City's part to provide the outstanding discovery.

## III. THAT THE CITY'S DID NOT PRODUCE A PRIVILEGE LOG WITH ITS RESPONSES AND OBJECTIONS DOES NOT CONSTITUTE A WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE

TST's assertion that the City waived the attorney-client privilege by failing to provide a privilege log with its responses and objections to TST's Requests for the Production is misplaced. Fed. R. Civ. P. 26(b)(5)(A) states in relevant part "[w]hen a party withholds information otherwise

discoverable by claiming that the information is privileged…the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed." As discussed, the City did not represent to TST that all documents were produced or that the City is done with document production when it served its responses and objections to the requests. To the extent TST's discovery requests sought communications that might be privileged, the City appropriately objected to the request to preserve its objection in the likely event that there would be privileged material in subsequent production. The City didn't waive attorney-client privilege, it intentionally preserved it. As TST is well-aware, the City is still reviewing and producing documents, including emails, some of which are likely to be withheld as privileged, as they involved communications with the City's Law Department. When the emails are produced, the City will update the privilege log accordingly in short order. The City sought an extension to the discovery deadline in order to finish document production and allow sufficient time for depositions. Even when counsel was in the middle of a federal trial, the City has cooperated with TST and has been diligent in its efforts to produce all responsive documents. There was no waiver of the privilege.

## IV. THE CITY HAS PRODUCED DOCUMENTS IN RESPONSE TO REQUESTS FOR PRODUCTION NOS. 1-2, 4-5 7-8 AND 16 AND THE PRE-*SHURTLEFF* DOCUMENTS ARE IRRELEVANT TO TST'S CLAIMS

The City produced a significant number of documents responsive to requests 1-2, 4-5, 7-8 and 16. These requests sought documents evidencing the City's ownership of the flags it flew following the ordinance, city council resolutions and mayoral proclamations for flag raisings, the legislative history of the ordinance, and data regarding flag "applications," a continued false construct that TST must force to support its theory that the City is still operating under the pre-*Shurtleff* flag-raising system. TST identified ten flags that it contends were flown in 2022, 2023

and 2024 for which there were no invoices, bills of sale or other documents evidencing ownership by the City. Likewise, TST identifies seven events from the City's Knack system in 2022 and 2023 which it claims are flag raisings for which it claims there are no mayoral proclamations or council resolutions. With respect to drafts of the ordinance, counsel requested documents from counsel to the City Council and was informed that there is no "file" for the ordinance.[1] The drafter of the ordinance, Kenzie Bok, is no longer a member of the Council. Finally, TST complains that the computer records that track City events, including flag raisings, do not contain all of the information TST seeks. The City can only produce the documents it has in its possession. The City has produced documents received from the Property Management Department, the Office of Intergovernmental Relations, Veteran Services, the Mayor's Office of LGBTQIA2S+ Advancement, the City Council, and the Mayor's Office. The City has produced documents to TST as received from the various City departments which have information responsive to TST's requests. The City anticipates that many of the gaps in the responses to some of these requests will be filled when it produces the relevant and non-privileged emails. Nonetheless, counsel for the City will look into whether there are any additional documents responsive to requests 1-2, 4-5, 7-8 and 16 that address these issues raised by TST. [2]

In the Motion to Compel, TST argues that documents prior to the Supreme Court's decision in *Shurtleff* are relevant to its claims. However, TST's claims are that the City failed to comply

[1] At the same time that it produced the 3,600 pages of emails, the City also produced a document provided by the City Council that appears to be a draft of the ordinance.

[2] TST did not raise these specific instances where there appear to be flags or flag raisings with no corresponding ownership documents or proclamations/resolutions during the conference. The Motion to Compel was the first time that undersigned counsel became aware of this alleged deficiency in the production. Nonetheless, these instances represent a very small portion of the flags and flag-raisings for which the City produced documents.

with the requirements that were set forth in the *Shurtleff* decision, and as such, should be required to fly its flag. There is no dispute that the City did not comply with *Shurtleff* in the manner in which it raised flags prior to the decision. That evidence is irrelevant. Although TST argues that the City's change in policy was pretextual and that the current Flagpole Policy is not materially different than before *Shurtleff*, that does not make evidence related to the pre-*Shurtleff* policy relevant in this case. In *Shurtleff*, the Supreme Court held that "Boston's flag-raising program does not express government speech." *Shurtleff v. City of Bos., Massachusetts*, 596 U.S. 243, 259, (2022). However, the Court further stated that "nothing prevents Boston from changing its policies going forward." *Id*. at 258. The City of Boston did that. On August 11, 2022, the mayor signed the City's new flag ordinance that was passed by the City Council on August 10, 2022. There is no need to compare and contrast the City's practices prior to and following *Shurtleff* to determine whether the new policy constitutes government speech. The Supreme Court laid out what the City needed to do moving forward the only question is whether the City took those steps to ensure flag raisings remain government speech. The City took remedial steps. Following the decision, the City began work on an ordinance that would keep the flagpole program within the boundaries of government speech pursuant to the test laid out in *Shurtleff*. Therefore, what is relevant to TST's claims is whether the City has been following the test laid out in *Shurtleff*, not what the City was doing before the decision came down.

Additionally, TST makes reference to the City flying the Camp Constitution Flag on August 3, 2022, and complains that this was one of the flags that was raised while the City had suspended the program. As TST is well aware, that flag was flown prior to the adoption of the ordinance, and was a remedy agreed-to and court-ordered under the policy that existed in 2017, when Camp Constitution made the request at issue in *Shurtleff*. TST is also mistaken that the City

takes applications. There are no applications. Flags are chosen through proclamations by Mayor Wu and resolutions of the city council outlining the City's reasons for flying the flag and the message it wishes to send. This is classic government speech and precisely what the *Shurtleff* Court suggested the City could do. TST must maintain the erroneous preconceived notion that flag raisings post-*Shurtleff* are done pursuant to applications from the community, despite all evidence to the contrary. Without it, TST knows that its claims fail. But that doesn't render records related to the old, pre-Shurtleff flag-raising policy relevant.

## V. THE CONCERNS REGARDING REQUESTS FOR PRODUCTION NOS. 3 AND 18-20 WILL BE ADDRESSED BY THE EMAIL PRODUCTION, A LARGE PORTION OF WHICH WAS PRODUCED IN RESPONSE TO THE MOTION TO COMPEL

TST seeks to compel production of documents responsive to Request Nos. 3, 18, and 20, which each address correspondence and in the case of Request No. 3, specifically emails. TST also seeks to compel documents responsive to Request No. 19, which seeks nonprivileged documents related to the decision to have the flag raisings operate as government speech following *Shurtleff*. These documents responsive to these requests will be the emails that the City has gathered, but for which counsel has not completed its review. Prior to TST filing its motion, the City acknowledged that email discovery was outstanding and told counsel that additional documents, including email communications were forthcoming. At the time of this opposition, the City has now produced approximately 3,600 pages of email communications. The City ran a search for communications from relevant custodians using the terms provided in TST's document requests. The search yielded 93,957 pages of emails which require review for responsiveness, privilege, and personal-identifying information. With limited resources, the City is trying to narrow these results and is reviewing these emails as quickly as possible. The City is prioritizing the review and anticipates that it will produce the remaining emails in batches.

**Conclusion**

For the reasons set forth herein, the City respectfully requests that this Honorable Court deny Plaintiff's Motion to Compel. The City has produced approximately 5,700 pages of documents. Although TST is dissatisfied at the pace of production, the City has made diligent efforts to search for and produce responsive documents. With the extended discovery deadline, the City is confident it can complete document production and fulfill its discovery obligations with sufficient time for TST to conduct depositions.

Respectfully submitted,

**THE CITY OF BOSTON**

By its attorney,

MICHAEL FIRESTONE
Corporation Counsel

/s/ Edward F. Whitesell, Jr.

Edward F. Whitesell, Jr. (BBO#644331)
Senior Assistant Corporation Counsel
Katherine Aubuchon-Jones (BBO#705490)
Senior Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4045 (EFW)
(617) 635-2902 (KA-J)
edward.whitesell@boston.gov
katherine.aubuchonjones@boston.gov

**Certificate of Service**

I, Edward F. Whitesell, Jr., hereby certify that on November 12, 2026, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants.

/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr.